Mr. McCarthy, good morning. Police Department, I'm John McCarthy. I represent the plaintiffs, I'll call them, but there are appellants on the issue of the civil rights claim, and there are appellees on the issue of the dismissal of the state court claims without prejudice. And if I may, I'd like to address that one first, because I think it's the quickest one for the court. Consistent with what Judge Ponzer did, after that ruling came out, we filed an action in the Superior Court of Hammond County against Arment. I think it's referenced in a couple of the briefs, the city's brief and Mr. Arment's brief. Arment filed a motion to dismiss. The claim is basically the same complaint that was in the district court, and Judge Carey of the Hammond County Superior Court on May 9th allowed the motion to dismiss as to the Massachusetts Civil Rights Act claim, the Chapter 93A claim, but denied the motion to dismiss with regard to negligence, conversion, and trespass claims against Mr. Arment. Arment has now filed an answer to the complaint. We've amended the complaint to add common law claims, or excuse me, 258 claims against the city of Springfield defendants, and an answer has been filed on their behalf, and it's proceeding. So I would suggest it's either moot or subject to estoppel with regard to Arment. Just to clarify my own understanding, so as to those pending claims in Massachusetts, you do not have a statute of limitations problem? We do not. That's the reason why we filed the complaint to begin with, Judge, because we were pressing against the statute of limitations, which is why we proceeded with the state court action while this appeal was pending. We had it to protect against the statute of limitations. But we've covered all that, at least as far as I'm concerned we have. The other side may have a different view. With regard to the civil rights aspect of it, though, this was presented on a Rule 12B6 motion, which was originally characterized as neither-or. It's a motion to dismiss or motion for summary judgment. The response was pretty elaborate with affidavits and exhibits. Judge Ponzer, in evaluating the case, decided that he was going to treat it as a 12B6 motion and not a motion for summary judgment. I think he says in his decision that it was too fact. He would have to allow discovery to go forward. We submit that Judge Ponzer went beyond the four corners of the complaint and the exhibits that are attached to the complaint to reach his decision, and that, in particular, his decision was informed by reviewing the affidavit of the Springfield Building Commission. I know the court has reviewed it. What occurred here, there was a tornado that struck the Springfield area on June 1, 2011. By the end of the day on June 2, 2011, my clients, who were either owners or tenants of a condominium project called South Commons Condominium, where there were residences and business units, their business, the building, all of their personal and business property, had been completely destroyed and demolished by Mr. Armand. Could you just walk through the state law scheme for demolition for me for a moment? Because I had trouble figuring out whether the city complied with the state law scheme for demolition or did not comply with it. From our perspective, they did not. They did not comply with it. They did not. Chapter 143, which outlines it and which the district court actually addressed Judge Saylor in the Galant case, which we cited too, requires, in Section 8 of that statute, requires that before you demolish it, the city is supposed to identify a board, they called it in the statute, that's with the city engineer, with the fire chief or the head of the fire department, and some disinterested third person. They're supposed to conduct a survey of a premises, and then they're supposed to issue a report, give the report to the building owner, and let the building owner have by noon the next day, has to respond what they're going to do if they're not going to do anything. Now, the response of the city to that. Just so I understand, prior to that, even there had to be notice even before the report gets triggered? There's no notice at all. No, under the statute, there had to be notice. And they didn't provide that notice either. There's zero notice. Even though under the statute, they had to provide notice. Both under the statute, and they concede that. Essentially, we attached their notices that started coming in six, seven, and 20 days later. Just so I get this. So under the statute, they had to provide notice first. Right. They then say you have until noon the next day. Right. In the interim, if they want to do something faster than that, if the city wants to take it down faster than that, you say they have to convene a board. And if they're going to act even faster than convening the board to issue this report, that they also have to give to the owner of the building. As I understand it, the aldermen or selectmen have to vote to allow the demolition to occur earlier? That's what the statute says. There's exceptions that are built into it if there's an emergency. And this is where I think Judge Ponser, we would submit went off the rails a little bit. There was a state of emergency declared by the governor under his executive powers for the whole area. There was enormous damage done throughout the area. Mayor Sarno also declared a state of emergency, although I don't think he has the authority to do that. He did. And what they jumped to from that is that the building constituted some form of emergency that required or didn't require but justified some type of emergency response. The thing I'm having trouble with is under the statute, I don't see where they have authority under the statute to destroy the building absent first providing notice and issuing a report unless somewhere along the way after that notice, the board of selectmen or the aldermen have voted to allow the building inspector to go ahead and destroy it. Is there something I'm missing? No, I don't think so, Your Honor. But the Code of Mass Regulations does provide at least arguably a position that if there's some imminent danger to life, that they can take action necessary to preserve and protect that against those dangers. And is that outside 143 then? In other words, they don't have to have given the notice or the report? I believe that that's certainly the position that they're taking, and it's arguable that that's the case. Well, do you have a view on it? Because if they're acting in violation of the state law scheme, that affects the 1983 analysis. If they're acting in compliance with the statutory scheme and you don't think you've got adequate pre-deprivation notice, that's a different matter. Here's the problem, Your Honor. I don't know why they did what they did. There's been no answer to the complaint. The complaint alleges that they did no survey, took no action to evaluate the condition of the premises, and the complaint alleges that the building did not have to get destroyed. So I guess just last question on this vein. Is it your position they acted, you said earlier they acted in violation of the state law scheme. Are you now saying they acted in conformity with the state law scheme because of this emergency exception? No, I'm telling you that's what they claim. But you disagree. So your claim is that they acted in violation of the state law scheme. Yes, Your Honor. So how can you win on the 1983 action if that's true? Well, I don't know what they did. And that's where this is. I know what they did. I don't know why they did it. But don't you have to? We have to figure that out to be able to say whether you win or lose under parents. Which is why I think this case should have been allowed to go forward with discovery. Remember, what happened here was that there was no communication to my clients. Why isn't this a pure issue of law? Because the law. The statute says one thing. They say yes, but the CMR gives us this authority. As Judge Barron has just said, wouldn't resolution of that issue of law be necessary to understand what your claim is? I would suggest, Your Honor, that you need to know what happened. If you apply the parent. Oh, it's actual intent as opposed to what they thought their authority was? We don't know. I know you don't know, but I'm asking why is that relevant? Because under the, as I understand the case law, Your Honor, there has to have been a reasonable basis for the decisions made, and we don't know what those decisions were. They could have been random and unauthorized. They could be part of some plan that the city had in place. We don't know, and we weren't allowed to conduct any discovery. What is your allegation? Is your allegation that the city violated the state law scheme that protects your rights to notice? Correct. Well, if that's the case, how can you win under Parrott v. Taylor? Because then you're alleging that they violated the state law scheme. Are you saying that the state law scheme that was violated itself doesn't provide sufficient pre-deprivation process? I'm saying we weren't provided any pre-deprivation process. I understand that. What I'm asking is what does the state law that you think governs provide? We just walked through. So I thought it provided, on your account, an obligation to first give your client notice, an obligation to convene a board and do a report, and that didn't happen. So that could suggest, then, that they violated state law, and under Parrott you lose under Section 1983 and you have to take it up under the state courts under state law. The alternative would be you're saying they didn't give you notice, they didn't convene the board. Even if they had done all that, it still would not have been adequate process. I just don't know what your claim is. Correct, Your Honor, because they were going to go forward. They've attempted to do that. Their condemnation notices stretched out over the 20 days later were all an effort to try to create the paper trail for one or two reasons, either because they knew they had to create this trail to cover state law, or the only way they were going to be able to make the claim that we had to pay for the demolition cost was if they created a paper trail. Because they're telling us to do things that were already done, and that all of the appeal was moved at that point. There was nothing left to appeal from. Because at that point you couldn't have had evidence that the building could have been stabilized and saved. We have pictures, Your Honor, that's all we have. That's all you have. Right. Thank you, Your Honor, unless there's other questions. No, thank you. Thank you, Your Honor. May it please the Court, Edward Pecoula, city solicitor, Springfield. On June 1st, 2011, a devastating tornado swept through Western Mass, going through a significant part of downtown Springfield. One of the victims of that tornado was the South Commons condominiums. Those condominiums lie approximately at the heart of downtown, at the corner of Main Street and Union Street. The building commissioner in this case was acting not as in Gallant, which was 143 section 7, but pursuant to 143 section 6, making an immediate inspection to determine, as is his duty under that section, if it constituted an immediate threat to public safety and welfare. In this case, he did so. The statute and the regulations talk about determination not made by the board, et cetera, as under section 7. Wait, can I just, under 6, it says the local inspector, he finds out that there's a structure that's causing danger. It says he shall inspect the same and he shall forthwith, in writing, notify the owner. Did he do that? To the best of his ability, he could. Under this statutory and regulatory theme, there is no notice that's required under state law. He can immediately proceed to the demolition phase to protect the public safety. That is his first obligation, I would say, under state law. So your reading of state law is he need not provide any notice before he destroys it? That's correct. If you look at the Gallant case, that was a different situation. That was a question about the blight of the building and as to whether it should have been removed and the discussion went on. And what is the standard under the law that governs here as to when? It is a public safety, imminent threat of public safety, which is similar, but the standard was in the, I believe, the SGCP case, which was approved by this court. And that's based on the reg? Correct. So in the SGCP case, that was one of the touchstones that they ruled upon in that situation. So I don't think the Gallant case is controlling here. I think this case is very much distinguishable from that. Given the, if nothing else, the context of an emergency being declared by not just the mayor, but the governor as well, the mayor certainly does have those powers under state law as well. And there's no question that there was an emergency. There's no question that this building, you know, was in the heart of downtown. It's collapsed. Could you just explain a little bit what the connection between the emergency that's declared is and the statutory standard that this building needed to come down? Certainly. As my brother mentioned, there's photographic evidence here. What that photographic evidence does reveal is that the building was literally coming apart. The photos that were taken within time show it going down. I understand that. You said that there was an emergency declaration about the tornado. What is the relevance of that to the question of whether there was an emergency need to take down this building? Well, because there was an emergency that was declared statewide, but in particular that we were in the epicenter of it, there were people killed. There were people injured. There was a lack of power. But that doesn't necessarily mean that this building has to be taken down on an emergency basis. Without any apparent process. Of course not. But the nexus, of course, is to this emergency and the need to be able to go through the streets. And we have not only by the public safety officials, but as well as once the emergency is over, the public and people. Does the reg that you're relying on allow that kind of analysis, or does the reg actually focus on the danger posed by the particular building? What is the reg? The reg is what? It's both, Your Honor. What we have here, getting to the particular building, your particular question, had this building collapsed, not only did it endanger surrounding buildings and surrounding people in those buildings, but it would have blocked off Main Street and Springfield for a long period of time. The streets are there for the purpose of protecting public safety. That is the purpose of having. That's true whether there's a tornado or not, though. But when you have a building that's in imminent danger of collapsing onto Main Street, that public safety would be affected. To stay, I think the court has a few more questions for you. On the post-deprivation side, I don't know if anyone has more questions on the pre-deprivation side. We'll sound in. On the post-deprivation side, there is a reference to a $100,000 liability cap. Is that, in your view, applicable? Is the cap applicable? Yes. In other words, can they get more than $100,000 post-deprivation? It's $100,000 per claimant. Here we have 22 claimants, I believe. Some may have much more than $100,000. Some may have less.  And that's a three-day provision, which, of course, they didn't meet. Isn't there a three-day provision in the statute? No, not under Chapter 258. That would be under Chapter 139, Section 2. That's an alternative remedy that would not go into effect until... Is that subject to the cap? No. That is not subject to the cap? No. So they could get unlimited under that? Correct. So there was the two state remedies. One, they did not exercise. The other one, they have since exercised, and that is ongoing in state court. And is a necessary trigger for that, 139, Section 2, at the time they got the order post-demolition, did that trigger their ability to then do the Section 2 claim, or when could they have done it? They could have done it as soon as they saw a demo crew out there and run to court to get an injunction. Is that right? I thought Section 2 was you may appeal the order. A person aggrieved by such order may challenge under Section 2. What order did they get? And that's what happened in Section 7. In under Section 6... Did they ever get an order in this case? There was a written notice, as my brother had mentioned. We also sought to perfect our lien. The written notice was post-demolition? Yes. Okay, and under Section 2, you can trigger Section 2 on the basis of a post-demolition order? You could, but you could also go to court and get an injunction to shut down the operation if you were so inclined. Or say, you know, there should be no demolition until some notice or until we do some studies. Under what? What could you have gotten that under? Basic equity. Excuse me? Basic equity. Well, basic equity for one, under 249 Section 5, you certainly have a petition for a mandamus if there was some sort of problem. 249 Section 4, you certainly have a right to appeal what appears to be a final decision of an elected official that he's rushing in to demolish this building without complying. So those are some statutory remedies that would have been available. What about the demolition costs? As I understand it, you can charge the cost of demolition to the landowner. That's correct. Unless they have appealed under one of those statutes and gotten a jury trial that says that the decision to knock it down was improper, they're responsible, and I assume from what you said, you are seeking to get the demolition costs. Where does that stand? Well, a strategic issue came up. A strategic issue came up. We filed for the demolition lien. After the fact. Correct. And one would suppose that if you were the plaintiff and had some sort of issue with the way the demolition went down, you would file a counterclaim. The plaintiff instead asked us to dismiss, and we did. We dismissed our request for the lien and the enforcement action, and those were the circumstances that were there. But we were in court, and they certainly would have had a right to assert a counterclaim. Okay. May it please the Court, for the defendant. Can you pull that a little closer to you? For Charlie Arment Trucking, Inc. Well, I believe that Judge Ponzer's decision dismissing the constitutional claims was correct on the grounds stated in his decision. There's some additional grounds that would apply to Charlie Arment Trucking for upholding the dismissal of those procedural and substantive due process claims, particularly with respect to the procedural due process claims. First, I do want to point out that the Court very properly treated this as a motion to dismiss under the 12B6 standard and not as a summary judgment motion. My client did not request the judge to treat this as a summary judgment motion, and we did not submit any extrinsic evidence in connection with our motion to dismiss. The Court acknowledged the additional materials in his ruling but explicitly stated that he was not relying on them. And to the extent that there were any inferences made by the judge, he made them in favor of the plaintiffs. Most importantly, that the building and contents were salvageable and need not have been demolished, and also that the plaintiffs had gotten no prior notice of the demolition order before they were actually demolished and the debris removed. As to Arment, I find it very difficult to conceive how a private demolition contractor could be held liable under the Federal Constitution for deprivation of procedural due process. As your Honors have pointed out, the State is the entity that provides the process that applies to this type of condemnation proceeding. Arment is not alleged to have had any prior experience or any dealings with whether that process was complied with or not. The statutes that we've just been discussing all reference the city, the building inspector, the alderman and the board of selectmen, and the mayor as having the authority on whether to issue condemnation orders and notices and how those orders should be carried out and whether notice of appeal should be granted. In terms of at least the procedural due process claim, Charlie Arment Trucking had nothing to do with the process that was or was not complied with. He merely carried out the condemnation orders that the city defendants had ultimately issued. As to the substantive due process claims, which were not addressed by other prior parties, this is not the case involving property damage. And even if all of the worst allegations of the plaintiff's complaint are credited, that my client stole and converted personal property of the plaintiffs, those are not the type of conduct that shocks the conscience. That, as the judge correctly decided, can be decided as a question of law. There's a continuum, of course, but where the only deprivation of rights have to do with property rights. There's no animus. There's no discrimination alleged. There's no threatening behavior. There's no malicious conduct on the part of Charlie Arment Trucking. The substantive due process just fails as a matter of law. With respect to the state claims, of course we're aware that the state court judge has now exercised jurisdiction over the state court claims that were refiled there. Three of them are common law claims, which remain pending against my client. At this point, given that the grounds for our request that this court dismiss those claims with prejudice was based on the argument that they were so utterly lacking in merit that they couldn't go forward in any venue, given that that's now been addressed by the state court, I don't feel I can credibly press that claim. However, I would ask the court to consider, if the constitutional claims are revived, to ask the district court to reconsider his discretionary dismissal of those claims so that if the constitutional claims are actually heard in the district court, that the state law claims be brought back into the same venue so that they can all be heard concurrently, because I do feel that they're overlapping and inextricably interlinked. Finally, with respect to the plaintiff's request that this court should order the case remanded as to the constitutional claims and that the plaintiffs be given leave to amend their complaint, it's our position that that request has either been waived or would be futile. Thank you, Your Honor. Thank you very much. The court is going to take a brief recess.